UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAW OFFICE OF JOSEPH J. CARIGLIA, P.C. | ) ) ) ) CIVIL ACTION |
| Plaintiff, | ) ) NO. 15-CV-40118-TSH |
| v. | ) ) ) |
| JEFFERSON D. JELLY | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND (Docket No. 10), DEFENDANT'S MOTION TO DISMISS (Docket No. 8), AND PLAINTIFF'S CROSS-MOTION TO STRIKE (Docket No. 16)**

**November 12, 2015**

**HILLMAN, D.J.**

Three motions are pending before this Court.  Defendant seeks to dismiss the case for lack of personal jurisdiction; Plaintiff seeks to remand the case to Massachusetts Superior Court for lack of subject matter jurisdiction and to strike a portion of Defendant's affidavit submitted alongside his motion to dismiss.  For the reasons set forth below, Plaintiff's motion to remand (Docket No. 10) is ***denied***, Defendant's motion to dismiss (Docket No. 8) is ***granted***, and Plaintiff's motion to strike (Docket No. 16) is ***denied as moot***.

**Background**

Plaintiff, the Law Office of Joseph J. Cariglia, P.C. (Cariglia or Plaintiff), is a Massachusetts professional corporation with a principal place of business in Worcester, Massachusetts.  Defendant, Jefferson D. Jelly, is a member of the bar of Connecticut and has a principal place of business in West Hartford, Connecticut.  In January of 2010, a married couple,

Mr. and Mrs. Jones (the Joneses), of Rutland, Massachusetts, were involved in a motor-vehicle accident in Connecticut. The Joneses sought legal representation from Jelly in connection with this accident. In October of 2011, they decided to change counsel.

After discharging Jelly, the Joneses entered into a written contingent fee agreement with Cariglia.[1] Because the case involved the rendering of legal services in both Massachusetts and Connecticut, Cariglia engaged a Connecticut law firm (the Connecticut firm) and referred the Connecticut portion of the litigation to one of its attorneys, Humbert Polito, Jr. The referral was made pursuant to a fee-sharing arrangement, whereby Cariglia was entitled to receive one third of the fee charged to the Joneses by the Connecticut firm. Cariglia also agreed to assume responsibility for compensating Jelly.

The Connecticut firm initiated a lawsuit on behalf of the Joneses in Connecticut in 2012. In July of 2015, the case was resolved, yielding a legal fee of approximately $186,000. After learning of this resolution, Jelly allegedly made a "written claim" to Cariglia, asserting that the contingent fee agreement between Cariglia and the Joneses was invalid under Connecticut law. Cariglia contends that, as a result of this claim, the Connecticut firm has refused to pay Cariglia his portion of the fee.

Cariglia brought suit against Jelly in Worcester Superior Court, asserting three counts: (1) violation of Mass. Gen. Laws ch. 93A; (2) tortious interference with contractual relations; and (3) unspecified declaratory judgment relating to Jelly's challenges to the legitimacy of the contract between Cariglia and the Joneses and the quantum meruit for Jelly's services. Jelly removed the case to this Court on the basis of diversity jurisdiction. Six days after removal, Cariglia amended

---

[1] The record does not clearly establish whether this contract was formed with both Mr. and Mrs. Jones or only Mrs. Jones. Because this distinction is not crucial to the issues raised by the instant motions, I shall assume that both Mr. and Mrs. Jones were parties to this agreement.

his complaint and dropped the Chapter 93A claim. Jelly then filed a motion to dismiss for lack of personal jurisdiction (Docket No. 8); and Cariglia filed a motion to remand for lack of subject matter jurisdiction (Docket No. 10) and a motion to strike an affidavit attached to Jelly's motion to dismiss. (Docket No. 16.)

## **Discussion**

### 1. *Cariglia's Motion to Remand for Lack of Subject Matter Jurisdiction*

#### *Standard of Review*

Pursuant to 28 U.S.C. § 1441(a), a case is properly removed to federal court only if the action could have been brought initially in federal court. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) (quoting § 1441(a)) ("As a general matter, defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'"). In a case based on diversity jurisdiction, the parties must be diverse in citizenship and the amount in controversy must be greater than $75,000. 28 U.S.C. § 1332(a)(1). The amount in controversy includes statutory multipliers of damages, such as the treble damages provision in Mass. Gen. Laws ch. 93A. *See Lopez v. U.S. Bank Nat. Ass'n*, No. 14-CV-11944-MGM, 2014 WL 4928883, at *2 (D. Mass. Sept. 30, 2014); *Santos v. Preferred Mut. Ins. Co.*, 21 F. Supp. 3d 111, 116 n.2 (D. Mass. 2014); *Williams v. Litton Loan Servicing*, No. CA 10-11866-MLW, 2011 WL 3585528, at *5 (D. Mass. Aug. 15, 2011).

#### *Analysis*

Cariglia argues that this Court lacks subject matter jurisdiction because the amount in controversy is less than $75,000. Cariglia asserts that he is seeking only the one-third portion of

the $186,000 fee—approximately $62,000. In opposition, Jelly argues that this Court has jurisdiction because, at the time of removal, the complaint included a claim for treble damages.

Cariglia's initial complaint did include a claim for treble damages under Mass. Gen. Laws ch. 93A. Thus, at the time of removal, the amount in controversy was greater than $75,000. After removal, Cariglia eliminated the 93A claim, and he now seeks only single damages, approximately $62,000. This Court has not been divested of jurisdiction. It is well established that "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); *see Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 390 (1998) ("for purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court"); *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 6, 7 (1st Cir. 1995) ("if events subsequent to commencement of the action reduce the amount in controversy below the statutory minimum, the federal court is not divested of jurisdiction. . . . [O]nce jurisdiction attaches, it is not ousted by a subsequent change of events."). Cariglia's motion to remand is therefore denied.

2. *Jelly's Motion to Dismiss for Lack of Personal Jurisdiction*

*Standard of Review*

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir. 1995)) (citation and quotation marks omitted). This Court "may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." *Id.* (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar*

*Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998)). "General jurisdiction exists when the defendant has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit." *Id.* (quoting *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir. 1992)). In this case, Cariglia has not asserted that Jelly is subject to general jurisdiction in Massachusetts.

"In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction." *Id.* (quoting *Mass. Sch. of Law,* 142 F.3d at 34). Specific personal jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 24 (1st Cir. 2007) (quoting *United Elec., Radio & Mach. Workers of America.*, 960 F.2d at 1088-89). The plaintiff must show that the Massachusetts long-arm statute, Mass. Gen. Law ch. 223A, § 3, grants jurisdiction, and that the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Daynard*, 290 F.3d at 52. Because the Supreme Judicial Court has interpreted that the Massachusetts long-arm statute extends to the limits allowed by the U.S. Constitution, this Court need consider only the due process inquiry. *Id.* (citing *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 280 N.E.2d 423, 424 (Mass. 1972)).

The courts of this Circuit use a three-part inquiry to determine whether the Constitution permits the exercise of specific personal jurisdiction. *See Carreras v. PMG Collins, LLC*, 660 F.3d 549, 554 (1st Cir. 2011). First, the plaintiff's claims must arise out of or be related to the defendant's contacts with the forum state. *See id.*; *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999). Second, the defendant's contacts must "constitute purposeful availment of the benefits and protections afforded by the forum's laws." *Phillips Exeter Acad.*,

196 F.3d at 288.  Third, the exercise of jurisdiction must be "consistent with principles of justice and fair play." *Carreras*, 660 F.3d at 554.

When personal jurisdiction is contested by a Rule 12(b)(2) motion to dismiss, the plaintiff bears "the burden of persuading the court that jurisdiction exists." *Negron-Torres*, 478 F.3d at 23 (quoting *Mass. Sch. of Law,* 142 F.3d at 34).  When deciding a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, this Court applies a "prima facie standard," considering "'only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Id.* (quoting *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir. 1992)).  In order to make a prima facie showing of personal jurisdiction, "[t]he plaintiff must go beyond the pleadings and make affirmative proof." *Id.* (quoting *Boit,* 967 F.2d at 675).  This Court takes "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Id.* (quoting *Mass. Sch. of Law,* 142 F.3d at 34).  Facts put forward by the defendant are then "add[ed] to the mix," but only "to the extent that they are uncontradicted." *Id.* (quoting *Mass. Sch. of Law,* 142 F.3d at 34).

### *Analysis*

Cariglia argues that personal jurisdiction is proper under the Massachusetts long arm statute and the U.S. Constitution because Jelly committed a tortious act outside of Massachusetts with the intent to cause injury in Massachusetts.  Cariglia's assertions of the details of this act, however, are vague.  He alleges that Jelly made a "written claim," in which Jelly contended that the contingent fee agreement between Cariglia and the Joneses was invalid.  Cariglia claims that "Jelly must have known that his attempt to impose himself on a fee would cause injury in Massachusetts" and that he "took a position that he knew would prevent Plaintiff from receiving

contractually obligated fees." (Docket No. 15 at 4-5.) Thus, Cariglia argues that "Jelly purposefully availed himself of Massachusetts by attempting to frustrate Plaintiff, a Massachusetts corporation, and that Jelly expressly aimed his actions in Connecticut to Plaintiff in Massachusetts." (Docket No. 15 at 5.)

Cariglia has submitted only one document outside the pleadings, an affidavit of one of Cariglia's attorneys, Cherele Gentile. According to Gentile, Jelly refused to comply with Cariglia's requests for documentation of the work that Jelly had performed on the Joneses' case. Gentile states that multiple letters were sent to Jelly regarding the quantum meruit value of his services. One such letter, sent from Gentile to Jelly, was submitted as an exhibit to Jelly's motion to dismiss.

Jelly, for his part, argues that his only association with Massachusetts is his representation of Mrs. Jones, a Massachusetts resident, for a claim brought only in Connecticut. Jelly asserts that he did not personally send any letters to Cariglia and had no substantive discussions with Cariglia regarding the fee for the Joneses' case. Jelly believes that any statements attributed to him were actually made by his attorney, whom he retained for the purpose of resolving this fee dispute. Moreover, Jelly contends that any letter sent to Cariglia by Jelly's attorney was merely in response to the letter sent to him by Gentile. Jelly has submitted his own affidavit alongside his motion to dismiss, in which he outlines the underlying facts of this fee dispute.

The "relatedness" prong of the personal jurisdiction inquiry focuses on the causal nexus between the plaintiff's claim and the defendant's contacts with the forum state. *See Astro–Med, Inc. v. Nihon Kohden Am., Inc.,* 591 F.3d 1, 9 (1st Cir. 2009). The relatedness standard ensures that defendants have fair warning that their conduct will subject them to the forum state's jurisdiction. In a tort case, such as this one, a defendant's in-state activities must be more than

merely the but-for cause of a plaintiff's injury; the defendant's in-state conduct must have "form[ed] an important, or at least material, element of proof in the plaintiff's case," *Harlow v. Children's Hosp.,* 432 F.3d 50, 61 (1st Cir. 2005), such that "the litigation itself is founded directly on those activities." *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011) (quoting *Hannon v. Beard*, 524 F.3d 275, 279-80 (1st Cir. 2008)).

To establish a claim of tortious interference with contractual relations under Massachusetts law, a plaintiff must demonstrate four elements: "(1) he [or she] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Cavicchi v. Koski*, 855 N.E.2d 1137, 1141 (Mass. App. Ct. 2006) (quoting *Draghetti v. Chmielewski,* 626 N.E.2d 862, 868 (Mass. 1994)).

Here, Jelly's only connection with Massachusetts is that he was replaced as representative for the Joneses by a Massachusetts law firm, Cariglia, and, as a result, Cariglia apparently owes him some portion of the fees earned on the Joneses' case.[2] As explained above, the communications between Cariglia and Jelly are not entirely clear. Neither party has submitted any letter sent to Cariglia by Jelly or his attorney. Cariglia only vaguely asserts that Jelly made a "written claim" that the fee agreement between Cariglia and the Joneses was invalid, and that this claim resulted in the Connecticut firm's decision to withhold Cariglia's portion of the fee.

Cariglia has not made any showing that Jelly's communication with Cariglia induced the Joneses to violate their agreement with Cariglia, nor has he even alleged that the Joneses have violated that agreement. According to Cariglia, the Connecticut firm is allegedly withholding the

---

[2] I express no opinion as to Jelly's actual entitlement to fees, as that issue is beyond the scope of the instant motions.

8

funds. Moreover, Cariglia has not alleged that the Joneses knew about Jelly's "written claim." Thus, assuming that Jelly did send a letter to Cariglia challenging the validity of Cariglia's agreement with the Joneses, the instant litigation is not founded on the sending of this letter and the letter does not form a material element of proof in Cariglia's claim. *See Adelson*, 652 F.3d at 81; *Harlow,* 432 F.3d at 61. This conduct is not "related" to Cariglia's claims for the purposes of specific personal jurisdiction.

Because Jelly's contacts with Massachusetts fail the relatedness prong of the three-part test for establishing personal jurisdiction, I need not discuss purposeful availment or reasonableness. Jelly's motion to dismiss is granted.

   3. *Cariglia's Motion to Strike Jelly's Affidavit*

Cariglia moves to strike paragraphs 10 and 12 of Jelly's affidavit on the grounds that these paragraphs contain inadmissible hearsay. In this Circuit there is no clear answer to the question of whether inadmissible statements may be considered for the purposes of a motion to dismiss under Rule 12(b)(2). I am inclined to find that the standard for affidavits set forth in Rule 56(c)(4) applies in this context. *See Am. Exp. Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989); *Metcalf v. Bay Ferries Ltd.*, 937 F. Supp. 2d 147, 150 (D. Mass. 2013); *Milford Power Ltd. P'ship by Milford Power Associates Inc. v. New England Power Co.*, 918 F. Supp. 471, 478 (D. Mass. 1996); *W. Marine Products, Inc. v. Dolphinite, Inc.*, No. CIV.A. 04-10251-PBS, 2005 WL 1000259, at *2 (D. Mass. Apr. 6, 2005). However, I need not reach a conclusion on this issue today, because the statements in Jelly's affidavit are not necessary to my determination that his contacts with Massachusetts are insufficient to confer personal jurisdiction. Accordingly, Plaintiff's motion to strike is denied as moot.

**Conclusion**

For the reason set forth above, Plaintiff's motion to remand (Docket No. 10) is ***denied***, Defendant's motion to dismiss (Docket No. 8) is ***granted***, and Plaintiff's motion to strike (Docket No. 16) is ***denied as moot***.  Plaintiff's complaint is hereby dismissed.

**SO ORDERED.**

                                                               */s/ Timothy S. Hillman*
                                                               **TIMOTHY S. HILLMAN**
                                                               **DISTRICT JUDGE**